UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MYRA DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02409-SEB-MG |
| | ) |
| KRISTOPHER DUNCAN in his individual and official capacity as an officer of the Muncie Police Department, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

If an individual is convicted of resisting a law enforcement officer lawfully engaged in the execution of the officer's duty, that individual can thereafter bring an excessive force claim against the officer based on that interaction only if the claim does not necessarily imply the invalidity of the individual's conviction. Here, the plaintiff brought an excessive force claim against a Muncie (Indiana) police officer, but after the officer had moved for summary judgment, the plaintiff pled guilty to the misdemeanor offense of resisting law enforcement. To explore the impact of this change, if any, on the legal posture of the case, we conducted a summary judgment hearing. Based on the parties' filings and arguments at the hearing, we now address the pending summary judgment motion.

  I.  **FACTUAL BACKGROUND**

The following material facts are not in dispute between the parties: on August 4, 2019, Muncie Police Officers Chris Kirby and Kristopher Duncan were dispatched at

approximately 3:55 p.m. to the intersection of Hackley Street and Main Street in Muncie, Indiana, to respond to calls reporting that Plaintiff Myra Davis and her daughter were engaged in a physical altercation. Following the arrest of Davis's daughter, Davis was found sitting in the driver's seat of her vehicle. Having admitted that she had had three drinks and was too intoxicated to drive, the Officers informed her that she could not drive and that someone had to come pick up her vehicle. After waiting for someone to arrive and after directing her multiple times to get out of her vehicle because it needed to be towed and after informing her that she could either walk home or sit on the curb to wait for a ride, Office Duncan gave Davis a final warning that she would be charged with driving under the influence if she did not exit her vehicle. Officer Kirby took possession of Davis's cell phone, and, after issuing a torrent of profanity at the police, Davis finally exited her vehicle, in the process of which she reached for and grabbed at Officer Kirby's taser. In an effort to get her under control, the Officers restrained Davis's arms, secured her by placing her against the vehicle, and put her under arrest.

While Davis was handcuffed, an Officer escorted her around the vehicle, during which walk she, either accidentally or purposefully (depending on which party you ask), stumbled, fell to the ground, and began screaming out in pain; her screams were caused, she said, by a re-injury of her hip following her recent hip replacement surgery. Emergency medical services were summoned to the scene and Davis was transported in an SUV to Indiana University – Ball Memorial Hospital, where hospital personnel examined her, found no acute medical issues with her hip, and cleared her to be transported to the Delaware County Jail. When Officers attempted to place her in the

backseat of the police car, Davis refused to enter, demanding (loudly) that she be permitted to ride in the front seat of the police vehicle because of her hip pain. Her protestations continued as did her refusal to enter the back seat. Davis stipulates that throughout this encounter, she screamed insults and belligerent words at medical staff and law enforcement officers and persisted in her refusal to get into the backseat of the vehicle. Her resistance included pushing back against Officers' efforts to place her in the car, locking up her legs to leverage her body and strengthen her resistance and hooking her right foot on the car door, all in an effort to forestall being placed in the back seat of the police vehicle, and, while actively resisting police efforts, Davis bit Officer Duncan on his right bicep. The parties agree that in attempting but failing to secure her physical compliance, Officer Duncan finally resorted to a "soft empty hand control tactic," namely, a knee strike which he applied to Davis's thigh to break the resistance she had created with her feet and legs by wedging them against the car door. The tactic deployed by Officer Duncan succeeded in allowing the Officers to place her in the backseat of the police vehicle to transfer her to jail.[1]

    Davis initially filed her lawsuit against the officers in state court on August 28, 2020, alleging that on August 4, 2019, Officers Kirby and Duncan of the Muncie Police Department deployed excessive force against her, in violation of the Fourth, Eighth, and Fourteenth Amendments of the United State Constitution and the Indiana Constitution,

---

[1] This encounter was videoed via the officers' body cameras, and the relevant footage was reviewed by the court along with the parties during the summary judgment hearing. There were no objections to the matters depicted in the video by either party.

generally. She initially included the City of Muncie as a Defendant, bringing both a 42 U.S.C. § 1983 claim and a negligent hiring, supervision, and retention claim against the municipality. Defendants timely removed the lawsuit to our court on September 23, 2020, and, a year later, on September 17, 2021, moved for summary judgment. Following briefing on the summary judgment motion, but before it could be ruled on by the court, on October 13, 2021, Davis pled guilty in state court to the Class A Misdemeanor of Resisting Law Enforcement.[2] In addition, in her response to Defendants' Motion for Summary Judgment, Davis abandoned all her claims against the City of Muncie and Officer Kirby, stating that she "does not contest Defendant Officer Chris Kirby nor Defendant City of Muncie's Motion for Summary Judgment," and "[t]he only claim that Plaintiff is pursuing is her claim that Officer Duncan used unreasonable and excessive force and violated her Fourth Amendment rights." Docket No. 39, at 1. On February 9, 2022, the Court directed Davis to file a notice stipulating to the entry of judgment on all claims, except the one remaining against Officer Duncan. Docket No. 48. That notice was filed on February 23, 2022, and dismissal of those defendants was docketed on March 18, 2022. Docket No. 50. Davis's claim against Officer Duncan for excessive force in violation of the Fourth Amendment is the subject of Duncan's motion for summary judgment and is ripe for determination.

---

[2] The crime of Resisting Law Enforcement as a Class A Misdemeanor occurs when a person knowingly or intentionally "forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties." Ind. Code § 35-44.1-3-1(a)(1).

4

Officer Duncan seeks summary judgment on Davis's claim against him, arguing that: (1) Davis has failed to identify any material facts in dispute, (2) Davis has failed to demonstrate that he violated any of her constitutional rights, (3) Officer Duncan is entitled to qualified immunity, and (4) Davis has in any event failed to address the merits of the Fourth Amendment claim beyond her response to the qualified immunity defense, and therefore has conceded her substantive Fourth Amendment arguments. Docket No. 41, at 2−9.

On August 26, 2022, we conducted a summary judgment hearing to address, inter alia, whether the Supreme Court's holding in *Heck v. Humphrey* bars Davis's Fourth Amendment claim based on her intervening conviction for resisting law enforcement. 512 U.S. 477 (1994). Officer Duncan contends that Davis's repeated allegations that she was not resisting arrest and did not pose a threat at the time he deployed the knee control technique imply the invalidity of her conviction, and thus, her Fourth Amendment claim is barred by *Heck*.

## II.     DISCUSSION AND DECISION

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) she was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon her by a person or persons acting under color of state law. *Buchanan–Moore v. Cnty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of N. Fond du Lac,* 384 F.3d 856, 861 (7th Cir. 2004)). Davis brings her § 1983 claim of excessive force under the Fourth Amendment to the United States

5

Constitution, which is applicable to state action through the Fourteenth Amendment. The parties do not dispute that Officer Duncan was acting under color of state law, but they disagree as to whether Davis's claim is *Heck*-barred, and if not, whether Davis has presented enough evidence and legal support to establish that she was deprived of a right secured to her by the Fourth Amendment and to survive summary judgment. We first address whether Davis's constitutional claim is *Heck*-barred, and, because we ultimately conclude it is not, we then address whether her claim survives summary judgment.

### A. *HECK* DOCTRINE

"The rule of *Heck v. Humphrey* is intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit." *McCann v. Neilsen,* 466 F.3d 619, 621 (7th Cir. 2006) (citing *Heck*, 512 U.S. at 484). "To this end, *Heck* bars a plaintiff from maintaining a § 1983 action in situations where 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Id.* at 621 (quoting *Heck*, 512 U.S. at 487). A plaintiff, such as Davis, who has been convicted of resisting law enforcement is not *per se Heck*-barred from maintaining a § 1983 action for excessive force stemming from the same confrontation." *McCann*, 466 F.3d 621 (citing *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006)). Rather, to properly apply *Heck'*s bar, we must analyze the relationship between her claim and the charge of which she was convicted:

6

> [A] plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction: "It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."

*Id.* at 621−22 (quoting *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)).

The definition of resisting law enforcement under Indiana law mirrors that cited in *Heck*: "A person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of [his] duties . . . commits resisting law enforcement." Ind. Code § 35-44.1-3-1(a)(1).

When considering whether an excessive force claim is *Heck*-barred by an underlying resisting law enforcement conviction, the timing of the resistance in relationship to the challenged force is critical. In *VanGilder v. Baker*, a § 1983 plaintiff's excessive force claim was not *Heck*-barred by virtue of his Indiana conviction for resisting law enforcement because the plaintiff did not "collaterally attack his conviction, deny that he resisted [the officer's] order . . . or challenge the factual basis presented at his change of plea hearing." 435 F.3d at 692. Rather, the plaintiff claimed that he "suffered unnecessary injuries because [the officer's] response to his resistance—a beating to the face that resulted in bruises and broken bones—was not, under the law governing excessive use of force, objectively reasonable." *Id.* "Were [the Seventh Circuit] to uphold the application of *Heck* in [that] case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the

7

right to sue for damages." *Id.* "Put another way, police subduing a suspect could use as much force as they wanted—and be shielded from accountability under civil law—as long as the prosecutor could get the plaintiff convicted on a charge of resisting." *Id.* This would "gut a large share of the protections provided by § 1983." *Id.*

The Seventh Circuit has repeatedly held excessive force claims containing this sequence of events—resistance to a lawful order followed by allegedly excessive force—are not *Heck*-barred. In *Evans v. Poskon*, another case involving an Indiana conviction for resisting law enforcement, the plaintiff brought a § 1983 action for excessive force, contending that: (1) he did not resist being taken into custody, that the police used excessive force to effect custody, and (3) that the police beat him severely even after reducing him to custody. 603 F.3d 362, 364 (7th Cir. 2010). The court held that the plaintiff "could not maintain the § 1983 claim based on the first assertion—that he did not *resist* being taken into custody—because such a showing would be incompatible with his conviction for resisting law enforcement." *Ocasio v. Turner*, 19 F. Supp. 3d 841, 854−55 (N.D. Ind. 2014) (citing *Evans*, 603 F.3d at 364). However, the plaintiff could proceed on the second and third claims that the police used excessive force in effecting custody as well as after he was in custody because those claims are not inconsistent with his conviction for resisting law enforcement. *Evans*, 603 F.3d at 364 (citing *Gilbert v. Cook,* 512 F.3d 899 (7th Cir. 2008); *VanGilder,* 435 F.3d at 692; *Dyer v. Lee,* 488 F.3d 876, 881 (11th Cir. 2007)). A plaintiff's resistance in response to an officer's lawful actions would be *Heck*-barred by a conviction for resisting law enforcement, but a plaintiff can still proceed with excessive force claims based on force used in response to

8

their resistance, and after they had ceased their resistance, because *Heck* "does not affect litigation about what happens after the crime is completed," and officers "who use force reasonably necessary to subdue an aggressor are not liable on the merits; but whether the force was reasonable is a question that may be litigated without transgressing *Heck*." *Gilbert*, 512 F.3d at 901.

### B. *HECK* APPLICATION

We begin by comparing Davis's § 1983 allegations to the facts underlying her conviction. Despite some confusing and inartful briefing by the attorneys, we understand the facts underlying Davis's conviction for resisting law enforcement to be as follows: Davis has admitted that she resisted and interfered with the officers in the performance of their official duties, that is, engaging in what she characterizes as her " brief tussle" with Officer Duncan when she refused to enter the rear seat of the police car for transit to the Delaware County Jail while creating commotion by her shouted insults and vulgarities directed at police and medical officials.

Unfortunately, the undeveloped state court record consisting of the charging information and plea colloquy fail to clarify the specific conduct admitted by Davis in her guilty plea. The charging information tracks the criminal statute, reciting merely that: "[o]n or about August 4, 2019, in Delaware County, State of Indiana, Myra Davis did knowingly or intentionally forcibly resist, obstruct or interfere with Muncie Police Department, a law enforcement officer, while said officer was lawfully engaged in its

9

duties as a law enforcement officer."[3] Docket No. 58-1, at 4. The record of Davis's change of plea hearing also fails to shed light on the specific criminal conduct Davis admitted to. During Davis's hearing, her criminal defense attorney, Donald Dunnuck, questioned her as to the factual basis for her guilty plea. Docket No. 58-3, at 9. Dunnuck asked Davis if she recalled August 4, 2019, and if she was in the custody of the Delaware County Police Department, to which Davis replied "yes." *Id.* Dunnuck then corrected himself to say Muncie Police Department, and then asked Davis if they were trying to take her to jail, to which Davis replied "yes." *Id.* Dunnuck then asked if Davis "resisted that," and she replied "yes." *Id.* Unfortunately, the officer whose body camera captured most of the video footage of the " brief tussle" between Davis and Officer Duncan was turned away from the altercation during Duncan's knee strike. Docket No. 39, at 3.

Davis's Fourth Amendment claim appears to be based on Officer Duncan's actions following her refusal to enter the backseat of the police vehicle, a resistance she explains was based on the pain in her recently re-injured hip following hip replacement surgery. When Officer Duncan's efforts to secure her compliance with his order to get into the back seat of the car were unavailing as her protests continued, he applied the soft control tactic of a knee strike to her upper leg. "After continuous resisting and being warned to stop, Officer Duncan used one knee strike to [Davis's] right outer thigh, a soft-empty hand control tactic, to get her to release her feet and legs from under the door." Docket

---

[3] Four other counts were charged but were all dismissed in Davis's plea agreement: Attempted Disarming of a Law Enforcement Officer (Officer Kirby); Battery Against a Public Safety Official (Officer Duncan); Disorderly Conduct; and and Public Intoxication.

No. 31, at 4. Davis maintains that this maneuver constituted excessive force, and that Officer Duncan's action was not objectively reasonable under the circumstances and was violative of her Fourth Amendment rights to be free from such force.

At the hearing on the motion for summary judgment, Davis's counsel conceded that Officer Duncan's order to Davis to get into the back seat of the police vehicle for transport to jail was lawful. Both parties agree that Davis did not comply, despite numerous demands from the Officers, including Duncan, that she do so; her resistance continued, exacerbated by her vociferous objections and refusals.

Analyzing Davis's civil claims against her criminal conviction, we conclude that her excessive force claim does not "necessarily imply the invalidity of [her] conviction." *Ocasio*, 19 F. Supp. 3d at 854 (quoting *Helman*, 742 F.3d at 762).

In the closely analogous *VanGilder* case, the Seventh Circuit found that the plaintiff did not deny that he had resisted the officer's orders, nor did he challenge the factual basis for his plea of guilty to the resisting law enforcement charge. 435 F.3d at 692. Rather, the plaintiff alleged that the officer's response to his resistance was not objectively reasonable. The court reasoned:

> Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages. Put another way, police subduing a suspect could use as much force as they wanted—and be shielded from accountability under civil law—as long as the prosecutor could get the plaintiff convicted on a charge of resisting. This would open the door to undesirable behavior and gut a large share of the protections provided by § 1983.

*Ocasio*, 19 F. Supp. 3d at 855 (quoting *VanGilder*, 435 F.3d at 692).

"*Heck* . . . does not affect litigation about what happens after the crime is completed." *Gilbert*, 512 F.3d at 901. The question in determining whether Heck bars a § 1983 claim for excessive force is whether after the resistance/refusal had occurred, Officer Duncan used more force than was reasonably necessary to secure Davis's compliance with his order to get back into the police vehicle. *Id.*; *see also Ocasio*, 19 F. Supp. 3d at 857.

"Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *VanGilder v. Baker*, 435 F.3d at 692. Accordingly, because Davis admitted her guilt to the misdemeanor charge of resistance, but objects in her § 1983 claim that the subsequent use of the knee control tactic was excessive force applied against her, we conclude Davis's Fourth Amendment claim is not *Heck*-barred.[4]

### C. SUMMARY JUDGMENT

Davis's claim, having survived Defendant's *Heck* challenge, we proceed next to our summary judgment analysis. Parties to a civil dispute may move for summary judgment as a way of resolving a case short of a trial, and summary judgment shall be granted "if

---

[4] We concede that the facts underlying the criminal charge could be viewed more expansively than we have done here, such that Davis's resistance would be viewed as a single episode beginning with her initial refusal to comply with Officer Duncan's order and continuing until he was forced to act to secure her compliance through the knee strike. The offsetting affidavits submitted by the parties purporting to reflect the recollections of the prosecutor and the defense counsel respectively from Davis's criminal case do not resolve the ambiguity of what Davis pled guilty to or supply reliable clarity in this regard. Because it is impossible to determine from the state court criminal record precisely what facts she pled guilty to, we have ruled in her favor through a more conservative interpretation that allows her constitutional claim to proceed, at least through the summary judgment analysis.

12

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."[5] *Id.* at 324. When ruling on a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572−73 (7th Cir. 2021).

To state a claim for relief under 42 U.S.C. § 1983, Davis must allege that: (1) she was deprived of a right secured to her by the Constitution or laws of the United States; and (2) the deprivation was visited upon her by a person or persons acting under color of state law. *Buchanan–Moore,* 570 F.3d at 827 (citing *Kramer,* 384 F.3d at 861). Davis brings her § 1983 claim of excessive force under the Fourth Amendment to the United States Constitution, which is applicable to state action through the Fourteenth Amendment. Because neither party disputes that Officer Duncan was acting under color of state law, the only issue before us is whether Davis was deprived of a right secured to her by the

---

[5] We note, as Defendants have as well, that Plaintiff's response to the Motion for Summary Judgment focused entirely on issues relating to qualified immunity and is entirely devoid of any Fourth Amendment analysis or contrary argument.

Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures."[6] U.S. Const. amend. IV.

Excessive force claims, such as this, are analyzed using the Fourth Amendment's "reasonableness" standard. *Stainback v. Dixon,* 569 F.3d 767, 771 (7th Cir. 2009). The Fourth Amendment protects against the use of force that is not "objectively reasonable," in other words, excessive. *Kinney v. Ind. Youth Ctr.*, 950 F.2d 462, 465 (7th Cir. 1991). The right to effectuate an arrest or seizure "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio,* 392 U.S. 1, 22–27 (1968)). However, this right is not without limits; an "officer's use of force is unconstitutional if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (citation and quotation marks omitted).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). To apply the Fourth Amendment's reasonableness test "requires

---

[6] Even though the incident concerns post-arrest conduct, the standard does not change because "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 3965 (1989).

careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting . . . " *Id.* Moreover, the "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and it also must be judged objectively; "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Here, in addition to relying on the body camera video footage that captured the details of Davis's increasingly belligerent resistance to the police officers—including her loud shouts and screaming at the officers and medical personnel, her stubborn physical resistance, and her biting Officer Duncan's bicep[7] —Officer Duncan also adduced evidence in the form of an expert report from John Ryan, an expert in the field of the continuum of acceptable police uses of force. Mr. Ryan reviewed, among other things, all the relevant police reports and body camera footage relating to this incident and concluded that in his expert opinion, "[a]ny reasonable and well-trained officer would conclude that the command presence, verbal directives, and soft-empty hand control

---

[7] The biting incident itself is not visible on the video footage, but Officer Duncan is shown grabbing his shirt sleeve and saying that Davis bit him. In addition, there's a white stain ostensibly left from Davis's mouth on Duncan's sleeve. Davis's counsel conceded at the hearing that Davis does not remember biting Officer Duncan, but he did not specifically dispute this fact in Davis's response to summary judgment. The movant's facts are "admitted unless the non-movant 'specifically controverts' them in its factual statement, shows them to be unsupported or demonstrates that reasonable inferences can be drawn in its favor." *Hinterberger v. City of Indianapolis,* 966 F.3d 523, 527 (7th Cir. 2020) (quoting S.D. Ind. Local Rule 56-1).

15

tactics both at the scene and during the transport process was consistent with generally accepted policies, practices, training, and legal mandates trained to officers for application in field operations." Docket No. 32-1, at 43.

Davis never deposed Officer Duncan's expert witness, nor did she submit any countervailing expert evidence to establish that the knee strike constituted excessive force. She criticized Mr. Ryan's report for its use of the phrase "soft-empty hand control tactics," rather than "knee strike." Soft empty hand techniques, as described by Mr. Ryan in his report, refer to the lowest level of acceptable physical control available to an officer on the use of force continuum before employing any kind of weapon. Mr. Ryan noted that the Officers in dealing with Ms. Davis had already employed various other low-level intrusion tactics, such as officer presence and verbal commands, before Officer Duncan moved to the next level of force, to wit, the empty hand control techniques. Empty hand control techniques, he explained, include "blocks, vertical stunning techniques such as directing a violently resisting subject to a wall or other vertical surface, [and] focus strikes," i.e., "hand strikes, leg strikes and combination of hand and leg strikes." *Burton v. Ruzicki*, 2007 WL 760528, at *8 (E.D. Wis. Mar. 8, 2007); *see also Clayton v. City of Bunkie*, 2009 U.S. Dist. LEXIS 30565, at *14 n.15 (W.D. La. Mar. 30, 2009) (explaining that empty hand control techniques encompass not only literal empty hand strikes, but also "joint locks, pressure points, or light knee strikes"). The unrebutted testimony establishes the reasonableness of the force utilized by Officer Duncan to secure Davis's compliance with his order to get into the rear seat of the police vehicle for transportation to the jail.

Because of the absence of any genuine issues of material fact, Davis is required to "go beyond [her] pleadings" to identify "specific facts showing that there is a genuine issue for trial." *Catrett*, 477 U.S. at 324. Davis has completely failed to do so, designating no evidence beyond her own interrogatory answers, which simply mirror the allegations in her complaint, to prove that Officer Duncan's force was excessive. Davis's entire theory of liability hinges on her allegation that Officer Duncan's knee strike amounted to excessive force because, she claims, the tactic broke her hip, but even as to that claim, she has submitted no supportive medical evidence. In sum, Davis has failed to adduce any cognizable, relevant, admissible evidence to establish that Officer Duncan subjected her to excessive force in violation of her Fourth Amendment rights, and no reasonable jury could rule in her favor in the absence of such evidence.[8]

### III.  CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment [Docket No. 30] is **GRANTED**. Final judgment shall be issued accordingly.

IT IS SO ORDERED.

Date:   9/27/2022

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[8] Defendant Duncan also sought a dismissal of the claim against him on qualified immunity grounds. The entry of summary judgment in his favor obviates the necessity of our addressing/resolving that issue.

Distribution:

Tia J. Combs
FREEMAN MATHIS & GARY, LLP
tcombs@fmglaw.com

Eddie Krause
COHEN GARELICK & GLAZIER
ekrause@cgglawfirm.com